IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| FOREST LAKE FACILITIES, LLC, and FOREST LAKE, MN, LIMITED PARTNERSHIP<br><br>Plaintiffs,<br><br>v.<br><br>DEFENDANT WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2006-CIBC16, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-CIBC16D,<br><br>Defendant. | Civil Action No. 0:17-cv-01766-DWF-TNL<br><br><br><br><br><br><br>**AMENDED COMPLAINT** |

For their Amended Complaint against Defendant Wells Fargo Bank, N.A. as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC16, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC16 ("Wells Fargo"), Plaintiffs Forest Lake Facilities, LLC and Forest Lake, MN, Limited Partnership (together, "Forest Lake") state and allege as follows:

## PARTIES

1.  Plaintiff Forest Lake Facilities, LLC is a Delaware limited liability company. None of its members is a citizen of South Dakota.

2. Plaintiff Forest Lake, MN, Limited Partnership is a Delaware limited partnership. None of its partners is a citizen of South Dakota.

3. Defendant Wells Fargo is a National Bank Association organized under the laws of the United States, with a principal place of business located in South Dakota.

## JURISDICTION AND VENUE

4. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because (1) there is complete diversity of citizenship between Plaintiffs and Defendant and (2) the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this district and is therefore deemed to reside in this district.

## BACKGROUND

**I.  The Mortgage and Note.**

6. Forest Lake executed and delivered to CIBC, Inc. ("CIBC") a mortgage dated June 5, 2006 (the "Mortgage") against real estate located at 1943 West Broadway Avenue, Forest Lake, Minnesota 55025 (the "Mortgaged Property") as security for a promissory note executed by Forest Lake on June 5, 2006, in favor of CIBC (the "Note").

7. Pursuant to the Note, the balloon payoff of the loan (the "Balloon Payment") became due on July 1, 2016 (the "Balloon Date").

8. Wells Fargo is the trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC16, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC16, which includes the Mortgage and Note.

9. At all relevant times, Berkadia Commercial Mortgage, LLC ("Berkadia") acted as Wells Fargo's servicer with respect to the Mortgage; in that capacity, Berkadia functioned as Wells Fargo's duly authorized agent.

## II. The Proposed Modification of the Lease.

10. Forest Lake leased the Mortgaged Property to Home Depot for its use of the Mortgaged Property as a store location pursuant to a written lease (the "Lease").

11. Throughout late 2015 and early 2016, in advance of the Balloon Date, Forest Lake and Home Depot negotiated an amendment to the Lease whereby the rental rate would have been slightly lowered and the lease term would have been extended (the "Proposed Lease Modification").

12. The term of the Lease was set to expire on April 30, 2018. Therefore, the effect of the Proposed Lease Modification would have been to increase the value of the Mortgaged Property, given that the value of triple-net leased real estate—*i.e.*, leased real estate for which the tenant pays all expenses—increases as the underlying lease term is extended farther into the future, even when the rental rate is slightly reduced.

13. This increase in value of the Mortgaged Property would have allowed Forest Lake to sell the Mortgaged Property in advance of the Balloon Date at a high enough value to make the Balloon Payment.

14. With respect to amendments of the Lease, Section 1.10(c) of the Mortgage provided as follows:

> Amendments to Leases. Borrower shall not, without prior written consent of Lender, amend, modify or waive the provisions of any Lease or terminate, reduce rents under,

accept a surrender of space under, or shorten the term of, any Lease (including any guaranty, letter of credit or other credit support with respect thereto)[.]

15. While other lender-consent provisions in the Mortgage provided that Wells Fargo could withhold consent in its sole discretion, with respect to amendments to the Lease to reduce rents, Section 1.10(c) did not authorize Wells Fargo to deny consent in its sole discretion without a reasonable basis for doing so.

16. Under Minnesota law, Wells Fargo had a duty to act reasonably in considering the Proposed Lease Modification and to act in good faith and deal fairly with Forest Lake under the Mortgage and Note.

### III. Wells Fargo's Unreasonable Denial of Consent to the Proposed Lease Modification.

17. In keeping with Section 1.10(c), on February 18, 2016, counsel for Forest Lake sent a draft written lease amendment memorializing the Proposed Lease Modification to Berkadia.

18. On March 18, 2016, Forest Lake's counsel provided additional information and documentation, as requested by Berkadia.

19. On March 22, 2016, Berkadia sent correspondence to Forest Lake's counsel stating that the Proposed Lease Modification would be submitted to the committee for approval that day.

20. In that same March 22 correspondence, Berkadia explicitly acknowledged the impending Balloon Date as well as the relationship between the Proposed Lease

Modification, the valuation of the Mortgaged Property, and Forest Lake's ability to make the Balloon Payment.

21. Berkadia, however, did not submit the Proposed Lease Modification to the committee on March 22, instead requesting additional information of Forest Lake.

22. On March 23, 2016, Forest Lake's counsel again provided additional information and documentation, as requested by Berkadia, and explicitly observed that the delay in obtaining Wells Fargo's consent to the Proposed Lease Modification was hindering Forest Lake's ability to make the Balloon Payment.

23. Also on March 23, Forest Lake's counsel observed in written correspondence to Berkadia that the risk impact of the Proposed Lease Modification for Wells Fargo was minimal given that the effective date of the Proposed Lease Modification was only one month prior to the Balloon Date.

24. On March 29, 2016, Berkadia informed Forest Lake that the committee required, among other information, current financial statements for Forest Lake's non-recourse carve-out guarantors under the Mortgage and Note.

25. On April 1, 2016, Forest Lake's counsel sent Berkadia correspondence responding to the committee's request for guarantor financials, observing that the committee's request for guarantor financials had nothing to do with the Proposed Lease Modification.

26. Wells Fargo, through Berkadia, declined to consent to the Proposed Lease Modification on May 2, 2016, citing as its sole basis Forest Lake's failure to provide unrelated guarantor financials.

27. Forest Lake had to sell or refinance the Mortgaged Property in order to make the Balloon Payment.

28. Forest Lake's ability to sell or refinance the Mortgaged Property at a sufficiently high value to make the Balloon Payment was dependent upon an extension of the Lease.

29. Wells Fargo's unreasonable refusal to consent to the Proposed Lease Modification had the effect of preventing a sale or refinance of the Mortgaged Property by Forest Lake in advance of the Balloon Date at a value that would have allowed Forest Lake to make the Balloon Payment.

### IV.  Wells Fargo's Wrongful Foreclosure.

30. As a result of Wells Fargo's unreasonable refusal to consent to the Proposed Lease Modification, Forest Lake was unable to sell or refinance the Mortgaged Property, and therefore, was unable to make the Balloon Payment.

31. Based upon a default that Wells Fargo created, Wells Fargo initiated foreclosure by advertisement.

32. Wells Fargo purchased the Mortgaged Property at the May 30, 2017 foreclosure sale.

33. The six-month statutory redemption period to redeem from the foreclosure sale was set to expire on November 30, 2017.

### V.  Forest Lake's Redemption of the Mortgaged Property.

34. During the redemption period, Wells Fargo received all rental revenues from the Mortgaged Property, without deduction for Forest Lake's landlord costs and

expenses under the Lease. All property management requirements with respect to the Mortgaged Property, including but not limited to payment of taxes and insurance, were being satisfied by Forest Lake or Home Depot.

35. During the redemption period, Forest Lake continued to work diligently toward identifying a buyer for the Mortgaged Property, in order to have funds necessary to redeem the Mortgaged Property.

36. On October 13, 2017, Home Depot delivered to Forest Lake a Notice of Exercise of Option ("Option"), electing to extend the Lease by an additional term of five years.

37. The Option did not require Wells Fargo's consent because it did not constitute an amendment of the Lease.

38. On October 24, 2017, Forest Lake was able to enter into a purchase agreement for the sale of the Mortgaged Property due to the additional lease term created by Home Depot's exercise of the Option.

39. In advance of the closing, Forest Lake requested the redemption amount from Wells Fargo.

40. The redemption amount, as calculated by Wells Fargo, was overstated.

41. The Court ordered that Forest Lake could pay the redemption amount, as calculated by Wells Fargo, under protest and without waiving any right to seek damages from Wells Fargo.

42. Forest Lake's sale of the Mortgaged Property closed on November 27, 2017, for a purchase price of $6,288,000.00.

43. Forest Lake redeemed the Mortgage Property under protest on November 28, 2017, using a portion of the proceeds from the sale of the Mortgaged Property.

**VI. Forest Lake's Damages.**

44. If Wells Fargo had reasonably consented to the Proposed Lease Modification in Spring 2016, Forest Lake would have been able to sell the Mortgaged Property in 2016 for $1,200,000.00 more than the amount obtained in November 2017, when Forest Lake sold the Mortgaged Property to redeem it from foreclosure.

45. In addition, Forest Lake has paid to Wells Fargo under the Note and Mortgage $672,467.62 more than the amount Forest Lake would have paid if Wells Fargo had reasonably consented to the Proposed Lease Modification in Spring 2016 and had not frustrated Forest Lake's ability to make the Balloon Payment on the Balloon Date.

## COUNT I
### (Breach of the Mortgage)

46. Forest Lake restates and realleges the preceding paragraphs as though fully set forth herein.

47. Wells Fargo's actions constituted a breach of the Mortgage.

48. As a direct and proximate result of Wells Fargo's breach of the Mortgage, Forest Lake incurred damages in an amount to be determined at trial.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

49. Forest Lake restates and realleges the preceding paragraphs as though fully set forth herein.

50. Under Minnesota law, the Mortgage and Note contained an implied covenant that required each party to the Mortgage and Note to deal with one another fairly and in good faith.

51. As set forth above, Wells Fargo failed to deal with Forest Lake fairly and in good faith in the course of the parties' performance under the Mortgage and Note.

52. Wells Fargo's conduct unjustifiably hindered and interfered with Forest Lake's ability to perform its obligations owed to Wells Fargo under the Mortgage and Note.

53. As a direct and proximate result of Wells Fargo's breach of the implied covenant of good faith and fair dealing, Forest Lake incurred damages in an amount to be determined at trial.

## COUNT III
### (Tortious Interference With Prospective Business Advantage/Contractual Relations)

54. Forest Lake restates and realleges the preceding paragraphs as though fully set forth herein.

55. Wells Fargo's refusal to consent to the Proposed Lease Modification caused Forest Lake to lose the ability to perform its obligations under the Mortgage and Note.

56. Wells Fargo's actions were without justification and were done to induce third-party lenders and purchasers not to enter into prospective contractual relations with Forest Lake.

57. Wells Fargo's interference has damaged Forest Lake in an amount to be determined at trial.

WHEREFORE, Plaintiffs Forest Lake Facilities, LLC and Forest Lake, MN, Limited Partnership request judgment as follows:

A. Awarding Plaintiffs damages from Wells Fargo in an amount to be determined at trial;

B. Awarding Plaintiffs their costs and disbursements, including reasonable attorneys' fees, incurred herein;

C. Awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

D. Granting such other relief as the Court deems proper.

Dated: April 18, 2018  s/ Kyle W. Ubl
John M. Koneck (#0057472)
Kyle W. Ubl (#0395872)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
jkoneck@fredlaw.com
kubl@fredlaw.com
Telephone: 612.492.7000

Attorneys for Plaintiffs

63532714.1